**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANASTACIO SALVADOR RODRIGUEZ, | |
| *Plaintiff,* | |
| v. | Civil Action No. 16-0977 (DLF) |
| ADAMS RESTAURANT GROUP, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION & ORDER**

This suit concerns whether Adams Restaurant Group unlawfully classified former employee Anastacio Rodriguez as an executive rather than as the nonmanagerial laborer he says he was.  Rodriguez sued the restaurant and its executive chef under the Fair Labor Standards Act, the District of Columbia Minimum Wage Act, and the District of Columbia Wage Payment and Wage Collection Law.  Dkt. 1.  Before the Court is the defendants' motion for summary judgment.  Dkt. 27.  For the reasons that follow, the motion will be granted in part and denied in part.

## I.  BACKGROUND

The Fair Labor Standards Act requires employers to pay overtime compensation (at least 150 percent of the rate of regular compensation) to a covered employee working more than forty hours in a week.  29 U.S.C. § 207(a).  The Act exempts certain employees from that requirement, however, including those who work "in a bona fide executive . . . capacity."  *Id.* § 213(a).  The D.C. Minimum Wage Act mirrors these provisions.  D.C. Code §§ 32-1003(c), 32-1004(a).  The

D.C. Payment and Wage Collection Law sets timing requirements for payment of wages and defines wages to include overtime premiums. *Id.* §§ 32-1301 *et seq.*

Plaintiff Anastacio Rodriguez alleges that defendants Adams Restaurant and executive chef Claudia Rivas's classification of him as a bona fide executive—and their corresponding decision not to pay him overtime—violated those laws. During discovery, Rodriguez and his former superiors gave very different accounts of his role with the company, both sides serving their own narrative. The restaurant's witnesses recalled Rodriguez regularly exercising managerial power, while Rodriguez described his work as manual-labor intensive and without administrative input or leadership.

The restaurant initially hired Rodriguez as a part-time "line cook" in June 2015, paying him $14 an hour to prepare ingredients and cook food. Rivas Dep. at 72:12–15, Dkt. 27-3. An immigrant from Mexico with only a high school education, Rodriguez had nineteen years of culinary experience but no formal culinary education. Rodriguez Dep. at 16:19–20, 19:13–20, Dkt. 28-1; Rivas Dep. at 212:4–13; 228:18-229:15, Dkt. 27-3. In September 2015, the restaurant promoted him to sous chef with a $55,000 annual salary and classified him as exempt from the overtime requirement. Adams Restaurant Answers to Pl.'s First Set of Interrogs., Answer to Interrog. No. 9, at 10–11, Dkt. 27-4. According to Rodriguez, his hours per week jumped from about forty to about seventy. Rodriguez Dep. at 44:6–8, Dkt. 28-1; Rodriguez Answers to Defs.' Interrog. Answer No. 3 at 4–5. Dkt. 28-1, Ex. B.

At first, another sous chef, Louis Benitez, also worked at the restaurant. *See* Rodriguez Dep. at 48:14–18, Dkt. 28-1. Rodriguez testified that he and Benitez both worked full days during their overlapping time as sous chefs, with Benitez supervising him. Rodriguez Dep. at 49:1–5, 52:7–19, Dkt. 28-1. The restaurant, on the other hand, claims that one of the sous chefs

was responsible for the day shift while the other was responsible for the night shift.  Adams Dep. at 160:18–161:7, Dkt. 27-6.  In any event, Benitez left the restaurant after a month or two and Rodriguez became the only sous chef.  *See* Rodriguez Dep. at 49:15–17, Dkt. 28-1, Ex. A; *id.* at 63:12–20, Dkt. 27-5.  After about half a year, Rodriguez was fired in March 2016.  Adams Restaurant Answers to Pl.'s First Set of Interrogs., Answer to Interrog. No. 9, at 10–11.

During Rodriguez's tenure, Rivas lived in Florida and visited the restaurant only two to five times per month.  Rivas Dep. at 31:2–3, Dkt. 27-3.  According to Rodriguez, however, she monitored employees daily through surveillance video, regularly informed them that she was watching them, and often provided corrective instruction and reprimands.  Rodriguez Dep. at 118:11–119:15, Dkt. 28-1; Rodriguez Decl. ¶ 6, Dkt. 28-1, Ex. C.  Rodriguez also claimed that Rivas "fired a lot of people" in the kitchen while Rodriguez was sous chef (and that he did not fire anyone himself).  Rodriguez Dep. at 50:2–10, 59:3–5, Dkt. 28-1.  Rodriguez testified that he was supervised by both Rivas and a restaurant manager (and Benitez at first), though Rivas disputed that.  Rodriguez Decl. ¶ 5; Rivas Dep. at 372:6–7 ("[Rodriguez] didn't have someone supervising him, he was a supervisor.").  Rivas testified that Rodriguez supervised line cooks, but Rodriguez recounted that he offered the line cooks very little instruction beyond some informal training during three line cooks' first day on the job.  Rivas Dep. at 174:14–17; Dkt. 27-3; Rodriguez Dep. at 86:16–20, 88:2–17, 89:8–16, 90:21–91:9, Dkt. 28-1.  Rodriguez conducted approximately three interviews of prospective hires, but he says that his questions were limited to "Where have you worked?" and "What do you know how to do?," and he simply relayed the answers to the restaurant manager, who made the hiring decision without his input.  Rodriguez Dep. at 59:6–61:20, Dkt. 28-1.  *But see* Adams Restaurant Answers to Pl.'s First Set of Interrogs., Answer to Interrog. No. 2, at 4 ("[Rodriguez] possessed the independent authority to

3

hire and fire other employees.").  According to the restaurant, Rodriguez's primary duty was

managing the restaurant's kitchen operations and staff, but according to Rodriguez, his daily

schedule generally consisted of preparing food and cooking.  Adams Restaurant Answers to Pl.'s

First Set of Interrogs., Answer to Interrog. No. 2, at 4; Dkt. 28-1, Ex. B, Pl.'s Interrog. Answer

No. 2, at 4.

After being fired, Rodriguez sued Adams Restaurant and Rivas (collectively, the

restaurant) under the Fair Labor Standards Act, the District of Columbia Minimum Wage Act,

and the District of Columbia Wage Payment and Wage Collection Law.  *See* Compl. at 4–7;

29 U.S.C. §§ 201 *et seq.*; D.C. Code §§ 32-1001 *et seq.*; D.C. Code §§ 32-1301 *et seq.*  After

discovery, the restaurant moved for summary judgment.  Adams Restaurant Mot. Summ. J.,

Dkt. 27.  The case was reassigned to the undersigned judge on December 4, 2017.

## II.  LEGAL STANDARD

A court grants summary judgment if the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A

"material" fact is one with potential to change the substantive outcome of the litigation.  *See*

*Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A

dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for

the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "If there

are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law

if the nonmoving party 'fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial.'"  *Holcomb*, 433 at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).  "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe," *id.* at 151, and it "is . . . to believe[]" "[t]he evidence of the non-movant," *Liberty Lobby*, 477 U.S. at 255.

At the same time, to win at summary judgment a defendant "need only identify the ways in which the plaintiff has failed to come forward with sufficient evidence to [allow] a reasonable jury to find in her favor on one or more essential elements of her claim." *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C. Cir. 2015); *see also Celotex*, 477 U.S. at 323–325.  And while the defendant bears this burden of establishing that the plaintiff lacks sufficient evidence, the defendant need not produce any evidence of its own.  The plaintiff, meanwhile, "cannot rely on the allegations of her own complaint in response to a summary judgment motion, but must substantiate them with . . . evidence that a reasonable jury could credit in support of each essential element of her claims." *Grimes*, 794 F.3d at 94.  The plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and must establish that the evidence is not "so one-sided that reasonable men and women must find" for the defendant.  *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 166 (D.C. Cir. 2015).

Summary judgment is appropriate, in sum, when "the parties agree about the facts—what happened—and the court accepts the movant's view of the legal implications of those facts, or . . . when a putatively disputed body of evidentiary material could not, even assuming a

sympathetic factfinder, reasonably support a finding crucial to the nonmoving party's legal position." *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

More specific to this case, "[w]hen the underlying facts are in dispute, the exemption question under the FLSA is a mixed question of law and fact." *Radtke v. Lifecare Mgmt. Partners*, 795 F.3d 159, 165 (D.C. Cir. 2015) (internal quotation marks and alteration omitted). "The question of how the [employees] spent their working time . . . is a question of fact.  The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

## III.  ANALYSIS

The Wage Payment and Wage Collection Law claim cannot proceed because the Minimum Wage Act "is the sole remedy for . . . overtime violations" under D.C. law.  *Columbia Thompson v. Digicon Corp.*, 107 F. Supp. 3d 49, 52 (D.D.C. 2015).  The legal standards for the overtime provisions of the Federal Labor Standards Act and the D.C. Minimum Wage Act are essentially identical, so the Court will analyze the claims together.  *Cf. Villar v. Flynn Architectural Finishes, Inc.*, 664 F. Supp. 2d 94, 96 (D.D.C. 2009).

### A.     The restaurant did not waive the executive exemption defense.

Rodriguez first argues that the executive exemption is an affirmative defense that the restaurant waived by failing to raise it in its answer.  Rodriguez Opp. Mem. at 4–5, Dkt. 28; *see also* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense."); *Harris v. U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997) ("[I]t is well-settled that a party's failure to plead an affirmative defense . . . generally results in the waiver of that defense and its exclusion from the case." (internal quotation marks and alteration omitted)); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–

97 (1974) ("[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof.").  Rodriguez's argument fails because the defendants provided sufficient notice of the defense in their answer.  *See Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 444 (D.C. Cir. 1994) ("The purpose of [Rule 8(c)] is to put opposing parties on notice of affirmative defenses and to afford them the opportunity to respond to the defenses.").  The answer asserted that "as an overtime exempt position, Plaintiff was not entitled to compensation for hours worked over 40 in a workweek." Answer ¶ 13, Dkt. 4.  The answer also admitted that Adams Restaurant "paid Plaintiff as if he was overtime exempt" because "Plaintiff was not entitled to additional pay for 'overtime hours' worked."  *Id.* ¶¶ 15, 16.  This was more than enough to place Rodriguez on notice of the restaurant's intention to invoke the executive-exemption defense.  Indeed, the complaint anticipated the defense and both sides' discovery was aimed at addressing the defense.  *See, e.g.*, Compl. ¶ 15.  Because Rodriguez "had notice of the [defense], conducted discovery on the issue, and had ample opportunity to respond," the defense was adequately raised.  *FEC v. NRA*, 254 F.3d 173, 189 (D.C. Cir. 2001); *see also 1443 Chapin St., LP v. PNC Bank*, 810 F. Supp. 2d 209, 220 (D.D.C. 2011) (observing that the defendant in *FEC v. NRA* raised an affirmative defense by filing an "informal 'notice of related decision'").

> **B.     Genuine disputes of fact preclude summary judgment.**

On the merits of the executive-exemption defense, however, Rodriguez has the better argument at this stage.  The Department of Labor has "promulgated detailed regulations outlining the criteria for the application of the FLSA exemptions," 29 C.F.R. §§ 541.100 *et seq.*, and these regulations "are entitled to judicial deference and are the primary source of guidance for determining the scope of exemptions to the FLSA," *McKinney v. United Stor-All Centers*

*LLC*, 656 F. Supp. 2d 114, 121 (D.D.C. 2009) (quoting *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir. 2008)).  A Department of Labor regulation establishes that an employee qualifies for the executive exemption when:  (1) the employee is compensated on a salary basis at a rate of at least $455 per week; (2) the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100.  The regulation defines the term "primary duty" as "the principal, main, major, or most important duty that the employee performs."  29 C.F.R. 541.700(a).  The regulation lists several factors to consider when determining an employee's primary duty: (1) "the relative importance of the exempt duties as compared with other types of duties"; (2) "the amount of time spent performing exempt work"; (3) "the employee's relative freedom from direct supervision"; and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  *Id.*[1]

---

[1] Until recently, courts interpreted the Federal Labor Standards Act "liberally to apply to the furthest reaches consistent with congressional direction." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (quotation marks omitted).  Exemptions were "narrowly construed against the employers seeking to assert them and their application limited to those [cases] plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).  In some circuits, employers bore the burden of establishing that an employee fell within an exemption by clear and convincing evidence. *Corning Glass Works*, 417 U.S. at 196–97 & n.12; *Smith v. Gov't Emps. Ins. Co.*, 590 F.3d 886, 891 & n.5 (D.C. Cir. 2010) (reporting varying levels of proof required in other circuits).

The United States Supreme Court recently rejected these principles, however, concluding that "[b]ecause the FLSA gives no textual indication that its exemptions should be construed narrowly, there is no reason to give them anything other than a fair (rather than a narrow)

Rodriguez concedes that the restaurant paid him more than $455 per week but contends that he did not meet the other requirements for exemption. *See* Rodriguez Opp. Mem. at 6 n.3, Dkt. 28.  On Rodriguez's telling, his primary duty was not management but cooking and food preparation, as apparent from the time he spent cooking and prepping rather than supervising; his supervision by Rivas, the restaurant manager, and Benitez; and his pay per hour compared to that of non-exempt kitchen staff. *See, e.g.*, Rodriguez Decl. ¶ 5; Rodriguez Dep. at 86:16–20, 88:2– 17, 89:8–16, 90:21–91:9, Dkt. 28-1; Dkt. 28-1, Ex. B, Rodriguez Interrog. Answer No. 2 at 4; Dkt. 28-1, Ex. I, Hourly Pay Rates of Non-Exempt Kitchen Staff; Rodriguez Opp. Mem. at 7–13. Neither did Rodriguez, on his account, customarily direct the work of other employees.  As he tells it, the line cooks were autonomous and received no or little oversight from him.  Rodriguez Dep. at 86:16–20, 88:2–17, 89:8–16, 90:21–91:9, Dkt. 28-1; Rodriguez Opp. Mem. at 12. Finally, according to Rodriguez, he did not hire or fire existing employees—Rivas and the restaurant manager made those calls. *See* Rodriguez Dep. 50:2–10, 59:3–5, Dkt. 28-1; Rodriguez Opp. Mem. at 12–13.  Rodriguez claims that he interviewed about three prospective workers but that he simply relayed information about their experience to the restaurant manager and had no input in the hiring decisions.  Rodriguez Dep. at 59:6–61:20, Dkt. 28-1.

A jury could reasonably conclude that Rodriguez's testimony is credible.  The restaurant argues that summary judgment should be granted because Rodriguez's allegations are based "solely upon [his] uncorroborated, self-serving assertions . . . , which are not supported by any credible evidence in the record."  Adams Restaurant Mot. Summ. J. at 1, Dkt. 27.  But unless a self-serving assertion is conclusory or "so undermined as to be incredible," it makes "no

---

interpretation."  *Encino Motorcars, LLC v. Navarro*, 138 S.Ct. 1134, 1142 (2018) (internal quotation marks and alteration omitted).  The exemptions, in short, "are as much a part of the FLSA's purpose as the overtime-pay requirement."  *Id.*

difference that [a] plaintiff's testimony is uncorroborated." *Robinson v. Pezzat*, 818 F.3d 1, 9, 10 (D.C. Cir. 2016). "After all, evidence a party proffers in support of its cause will usually, in some sense, be 'self-serving.'" *Perez*, 823 F.3d at 710. Whether self-serving or not, the parties "are legally competent to give material testimony" and in many cases are "the key, or even sole, witnesses." *Id.* "To the extent the testimony of a witness who is also a party may be impaired by party self-interest, it is ordinarily the role of the jury—not the court on summary judgment—to discount it accordingly." *Id.*

The exception to that rule for conclusory or incredible assertions does not apply here. Rodriguez's testimony is far from conclusory—he explained in detail the conditions of his work, how he spent his time, the extent to which he supervised others, and the extent to which others supervised him. *Compare* Rodriguez Dep., *and* Rodriguez Decl., *with Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (concluding with respect to a retaliation claim that the plaintiff's testimony was conclusory because she asserted only that she "applied for summer jobs in 1996 and 1997 and was not hired although 'another student, who had less experience and education was hired'"). And there are only "narrow circumstances" in which a court may put aside self-serving testimony as incredible, such as when the testimony is both uncorroborated and undermined by "other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury." *United States v. Seventeen Thousand Nine Hundred Dollars*, 859 F.3d 1085, 1093 (D.C. Cir. 2017) (some quotation marks omitted); *see also Chenari v. George Washington Univ.*, 847 F.3d 740, 747–48 (D.C. Cir. 2017) (noting that "evidence sufficient to dismiss a plaintiff's uncorroborated, self-serving testimony . . . is rare" and providing as examples a "quite clear videotape" and the testimony of "multiple disinterested witnesses" (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)) (internal quotation marks and

alterations omitted)).  Rodriguez's testimony does not fall into this category because it is internally consistent, plausible, and contradicted only by other self-serving testimony.  Rule 56 thus precludes the Court from concluding that "[the restaurant's] story is truthful and [Rodriguez's] story is a fabrication."  *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006); *see also, e.g.*, *id.* at 333 ("[A]lthough a jury might ultimately decide to credit the version of the events described by the defendants over that offered by the plaintiff, this is not a basis upon which a court may rest in granting a motion for summary judgment."); *Pezzat*, 818 F.3d at 8 ("[T]he summary judgment standard requires us to credit the plaintiff's version of events, even if 'directly contradictory' to other testimony." (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1867 (2014))); *Chenari*, 847 F.3d at 747–48 (describing contradicting testimony between the plaintiff and another witness as "a classic genuine dispute of material fact" (internal quotation marks omitted)); *Harris*, 776 F.3d at 914–15 (similar); *Ayissi–Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (similar); *Johnson v. District of Columbia*, 528 F.3d 969, 977 (D.C. Cir. 2008) (similar).  In this case, "[c]orroboration goes to credibility, a question for the jury, not the district court."  *Pezzat*, 818 F.3d at 9.

The conflicting accounts of Rodriguez's role with the restaurant present numerous disputes of material fact that could determine the legal conclusion whether the restaurant misclassified him.  The jury could reasonably resolve these disputes in Rodriguez's favor, and that precludes summary judgment.[2]

---

[2] The restaurant invokes the Act's statute of limitations, which bars suits not commenced within two years after the cause of action accrued "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a); *see* Adams Restaurant Mot. Summ. J. at 14–16.  Because Rodriguez sued well within the two-year period, this provision is inapplicable.

**CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that the defendants' Motion for Summary Judgment, Dkt. 27, is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the motion is granted with respect to the claim under the D.C. Wage Payment and Wage Collection Law and is otherwise denied.  It is further

**ORDERED** that a status conference is scheduled for May 1, 2018 at 10:00 a.m. in Courtroom 12 to discuss further proceedings.

**SO ORDERED.**

_____
DABNEY L. FRIEDRICH
United States District Judge

Date:  April 23, 2018